# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | | |
|---|---|---|
| **EUREKA LATAE MCGEE** | * | **CIVIL ACTION NO. 08-0831** |
| **VERSUS** | * | **JUDGE HICKS** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## Background & Procedural History

Eureka Latae McGee filed the instant applications for Title XVI Supplemental Security Income payments and Title II Disability Insurance Benefits on March 27, 2003. (*See* Tr. 21, 30-33, 11).[1] She alleged disability since March 19, 2003, due to grand mal seizures, cerebral palsy, and inflammatory arthritis. (Tr. 39). The claims were denied at the initial stage of the administrative process. (Tr. 21-25). Thereafter, McGee requested and received a February 26, 2004, hearing before an Administrative Law Judge ("ALJ"). (Tr. 88-100). However, in an April

---

[1] Previously, McGee purportedly received supplemental security income payments until she reached the age of 18 or 19. (Tr. 117).

23, 2004, written decision, ALJ Thomas Bundy determined that McGee was not disabled under the Social Security Act. (Tr. 8-16). McGee appealed the adverse decision to the Appeals Council. On May 19, 2004, the Appeals Council denied McGee's request for review. (Tr. 4-6).

On July 12, 2004, McGee sought review before this court. *McGee v. Commissioner, Social Security Administration*, Civil Action Number 04-1483 (W.D. La.). On December 27, 2005, Magistrate Judge Hornsby reversed and remanded the case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). (Tr. 139-144). Upon remand from the district court, the Appeals Council remanded the matter to an ALJ for further proceedings. (Tr. 147-148).[2]

A new hearing was held before ALJ Bundy on May 19, 2006. (Tr. 402-416). In a July 6, 2006, written decision, ALJ Bundy again held that McGee was not disabled under the Act. (Tr. 178-188). However, on April 7, 2007, the Appeals Council assumed jurisdiction and remanded the case to a new ALJ for further consideration. (Tr. 122-126, 162-167).

On June 27, 2007, ALJ Leslie Rodriguez held a third hearing in the matter. (Tr. 417-458). In a December 26, 2007, written decision, ALJ Rodriguez determined that McGee was not disabled, finding at Step Five of the sequential evaluation process that she was able to make an adjustment to work that existed in substantial numbers in the national economy. (Tr. 110-121). McGee again petitioned the Appeals Council to review the unfavorable decision. However, on April 16, 2008, the Appeals Council denied McGee's request for review; thus ALJ Rodriguez's

---

[2] While the case was pending in federal court, McGee filed additional applications for Supplemental Security Income payments and Disability Insurance Benefits on June 29, 2005. (Tr. 198-200, 359-361). The claims were denied at the initial stage of the administrative process. (Tr. 149-152 362-366). Upon remand, the Commissioner consolidated the 2005 claims with the 2003 claims. (Tr. 148).

2

decision became the final decision of the Commissioner. (Tr. 101-103).

On June 12, 2008, McGee sought review before this court. She alleges the following errors:

1) the ALJ's Step Three determination is not supported by substantial evidence;

2) the Appeals Council erred when it failed to address additional evidence and arguments submitted in connection with the request for review; and

3) the ALJ's Step Five determination is not supported by substantial evidence.

## **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de*

*novo*, or substitute its judgment for that of the Secretary.  *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act (the "Act"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).   Based on a claimant's age, education, and work experience, the Act utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the Act.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3)  An individual whose impairment(s) meets or equals a listed impairment in

> [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See, Boyd v. Apfel, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520. The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

Issue 1:

The ALJ determined at Step Two of the sequential evaluation process that McGee suffers from severe impairments of history of cerebral palsy and disturbed ambulation. (Tr. 115).[3] He concluded, however, that these impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. *Id*.

---

[3] The ALJ also determined that plaintiff suffered from non-severe impairments of borderline intellectual functioning and personality disorder. (Tr. 115).

Plaintiff contends that the ALJ's determination that she did not meet Listing 11.07 is not supported by substantial evidence.[4] Rather, she contends that she meets Listing 11.07D. The relevant listing(s) provides

> **11.07 Cerebral palsy. With**:
>
> A. IQ of 70 or less; or
>
> B. Abnormal behavior patterns, such as destructiveness or emotional instability; or
>
> C. Significant interference in communication due to speech, hearing, or visual defect; or
>
> **D. Disorganization of motor function as described in 11.04B**.
>
> **11.04**
> B. Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C).
>
> **11.00**
> C. Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combination, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (in pertinent part) (emphasis added).

To establish that a claimant's injuries meet or medically equal a Listing, the claimant must provide medical findings that support all of the criteria for a listed impairment (or most similarly listed impairment). *See, Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). An

---

[4] The ALJ also determined that McGee did not meet Listings 11.02 and 11.03. (Tr. 115). Plaintiff has not challenged those findings. *Id*.

6

impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990). If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that Listings-level impairments are not present. *Selders*, 914 F.2d at 620. If a claimant does not exhibit all of the requisite findings of a listed impairment, medical equivalence may be established if the claimant has other findings related to the impairment that equal or exceed the required criteria for the listed impairment. 20 C.F.R. § 404.1526(b)(1). When determining whether an impairment medically equals a listing, the Commissioner considers all relevant evidence in the record. 20 C.F.R. §§ 404.1526(c), 416.926(c).

The ALJ resolved the Step Three inquiry by observing that there was "no documented objective medical evidence that the claimant has met any of the neurological listings." (Tr. 115). Although, the foregoing explanation appears to conflict with the ALJ's Step Two determination that McGee suffers from a history of cerebral palsy and disturbed ambulation (at least for purposes of the two broad criteria contemplated under Listing 11.07D), the ALJ also implicitly determined that McGee's ambulatory difficulty did not rise to listing level severity.[5] *See* Listing 11.00C ("assessment of impairment depends on the degree of interference with locomotion . . .").[6] The instant record contains substantial, albeit not uniform, evidence to support this determination.

---

[5] The ALJ found that plaintiff retained the residual functional capacity for sedentary work, which, by definition, means that she can stand and walk for a total of approximately two hours during an eight hour workday. SSR 96-9p; *see* discussion, *infra*.

[6] The musculoskeletal listings provide more meaningful guidance on the inability to ambulate effectively. *See* Listing 1.00B(2)(b). However, those listings expressly provide that impairments with neurological causes are to be evaluated under Listing 11.00. (Listing 1.00B(1)).

7

On May 22, 2003, a neurological surgeon, Warren D. Long, M.D., examined McGee and observed that she could walk up and down the hall, with "exaggeration of outward movement or talipes equinovarus of the left foot, and minimal on the right." (Tr. 76-79). She walked without any aids. *Id*. McGee reported that she became a little fatigued when she walked for a long distance, but that she could easily walk a city block. *Id*. Long opined that McGee "basically has no gait disturbance as she walks without any aids." *Id*. Similarly, during an August 25, 2003, outpatient visit at the LSU Health Sciences Center, Dr. Bozeman noted that McGee had a normal gait and symmetric extremities. (Tr. 86-87).

On August 16, 2005, Robert Holladay, M.D., examined plaintiff at the request of Disability Determination Services. (Tr. 248-250). He indicated that McGee exhibited a spastic type cerebral palsy gait, with some mild scissoring, and fair balance. *Id*. He nonetheless opined that she could sit, stand, or walk throughout an eight hour work day. *Id*. She could also ambulate without a cane, crutch, or walker. *Id*. In fact, as recently as August 2007, McGee's medical records indicate that her cerebral palsy was mild and that she ambulated without aids, with only mild spasticity. (Tr. 354-355).

Although there is no question that the record contains other evidence which could support a finding that McGee's ability to ambulate was more severely impaired than what the ALJ ultimately credited, the above evidence provides substantial support for the ALJ's implicit finding that plaintiff's lower extremity dysfunction did not meet the severity requirement for Listing 11.07D.

Issues 2-3:

The ALJ next determined that McGee retained the residual functional capacity to perform

8

the exertional demands of sedentary work, reduced by the need to avoid sharp objects, dangerous moving machines, and work at unprotected heights. (Tr. 116). She can sit constantly; stand/walk; use vibratory hand tools/machinery; reach overhead and stoop occasionally. *Id*.[7] However, she cannot use foot controls, squat, kneel, crawl, climb ladders, or work at unprotected heights. *Id*. She also cannot perform highly stressful jobs, but can perform repetitive low stress work. *Id*.

The undersigned observes that the ALJ's residual functional capacity assessment is substantially supported by a July 29, 2004, functional capacity evaluation conducted by physical therapist, Steve Allison; Dr. Holladay's August 16, 2005, physical examination; and a July 23, 2004, psychological evaluation administered by David Atkins, Ph.D. (Tr. 248-250, 268-299).[8]

---

[7] Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

[8] Although not raised by plaintiff, the undersigned observes that the ALJ discounted the significance of plaintiff's alleged "seizures" or "muscles spasms" due in no small part to the fact that she never complained about the condition until she lost her SSI benefits and because there was no objective evidence of a seizure disorder. However, the record does contain evidence that McGee complained about these symptoms as early as 1996. (Tr. 338). Testing confirmed that the episodes were not seizures, but muscle spasms which were observed by a physician. *Id*.

Furthermore, a May 3, 2007, emergency room visit reveals that McGee took Baclofen for her muscle spasms. (Tr. 351). However, she stopped taking the medication because someone told her that it could cause her chest to hurt. *Id*. Nevertheless, even without the medication, McGee reported to medical personnel that she only experienced two muscle spasms per day – a frequency which would not undermine the ALJ's Step Five determination. *Id*.; *See* Tr. 412, 452. Accordingly, any error was harmless. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's omission does not require remand unless it affected claimant's substantial rights). Procedural perfection in administrative proceedings is not required. *Anderson v. Sullivan*, 887

9

However, plaintiff essentially contends that the ALJ's residual functional capacity assessment was undermined by a second, post-ALJ decision functional capacity evaluation conducted by Steve Allison on February 2, 2008, ("2008 FCE"), wherein he found *inter alia*, that McGee needed an assistive device to walk, that she could never use vibratory tools, and that her ability to reach and finger was limited to non-productive rates. (*See* Tr. 388-401).

Plaintiff contends that the Appeals Council committed reversible error when it failed to address the 2008 FCE which she submitted in the first instance to the review board. Plaintiff argues that pursuant to the Hearings, Appeals and Litigation Law Manual ("HALLEX"), the Appeals Council was obliged to address the additional evidence or legal arguments submitted in her request for review. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (citing HALLEX § I-3-501). However, as plaintiff's counsel recently noted in another case before this court, over thirteen years ago, the Executive Director of the Office of Appellate Operations suspended "the requirement for a detailed discussion of additional evidence and for specific responses to contentions in denial notices." *See Thompson v. Astrue*, Civil Action Number 08-1511 (W.D. La. [doc. # 10]) (citing HALLEX § I-3-5-90).[9]

Moreover, in the Fifth Circuit, evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision. *See Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005); *Higginbotham v. Barnhart*, 163 Fed. Appx. 279, 2006 WL 166284 (5th Cir. 1/10/2006)

---

F.2d 630, 634 (5th Cir. 1989) (citation omitted).

[9] Although the suspension was purportedly temporary, there is no indication that it has been lifted.

(unpubl.) ("*Higginbotham II*").[10]  Rather, the evidence constitutes part of the instant record and provides a basis for remand so long as it is new, material and related to the period before the ALJ's decision.  *See Higginbotham, supra*; 20 C.F.R. § 404.970(b).[11]  Here, however, there is no indication that the 2008 FCE reflected plaintiff's condition as of the *hearing date* or at the time of the ALJ's decision, rather than a "later-acquired disability or . . . the subsequent deterioration of the previously non-disabling condition." *Haywood v. Sullivan*, 888 F.2d 1463, 1471-1472 (5th Cir. 1989) (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir.1985) (internal quotation marks omitted)).[12]  Moreover, even if the 2008 FCE was pertinent to the relevant period, it still was not material, *i.e.*, relevant, probative, and likely to have changed the outcome of the Commissioner's determination.  *See, Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989).

Plaintiff contends that the 2008 FCE's additional limitations of non-repetitive lifting, pushing and pulling, reaching, and stooping undermine the ALJ's Step Five determination that McGee could make an adjustment to other work that exists in significant numbers in the national

---

[10] Despite the presence of new evidence in *Higginbotham*, the panel on subsequent appeal upheld the district court's decision to affirm the Commissioner's denial of benefits. *Higginbotham II*.  The panel itself discounted a diagnosis of disability by claimant's treating physician as conclusory and unsupported. *Id*.

[11] *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs*. as support for its finding that post-ALJ evidence is to be considered part of the record.  *See, Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia*, *Perez v. Chater*, 77 F.3d 41, 44–45 (2d Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs*., 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)).  Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period.  *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

[12] Fifth Circuit case law suggests that the relevant period for a disability claim extends until the date of the administrative hearing.  *Hammond v. Barnhart*, 132 Fed. Appx. (5th Cir. May 17, 2005) (unpubl.); *Haywood*, 888 F.2d at 1472; *Johnson*, 767 F.2d at 183.  Medical evidence that post-dates a hearing may be considered, provided that it addresses the severity of the claimant's pre-hearing condition. *Hammond, supra*.

economy which was premised upon a vocational expert's testimony that someone with Ms. McGee's residual functional capacity could perform the jobs of fishing reel assembler, paster and cutter, and order taker. To support his argument, plaintiff attached to his Appeals Council submission information from the Dictionary of Occupational Titles and other sources which indicate that the jobs of fishing reel assembler and paster and cutter involve repetitive work. (Tr. 267-273). However, there is no indication that these jobs require *repetitive* lifting, pushing, pulling, reaching, and stooping.[13] Even if plaintiff was limited to solely the order taker job, this position by itself existed in significant numbers in the national economy.[14]

Finally, although by no means dispositive, it is worth noting that plaintiff retains the capacity to work as a school bus monitor, albeit not at the substantially gainful level. (Tr. 422-423); *see also*, M/Leave to proceed IFP [doc. #2]. The only apparent reason that McGee does not perform the work at the substantially gainful level is that the school board does not provide her with sufficient hours. *Id*.[15]

For the foregoing reasons, the undersigned finds that the Commissioner's decision is

---

[13] The 2008 FCE defined "repetitive" as a task cycle of less than 30 seconds. (Tr. 391).

[14] There are approximately 18,760 order taker jobs at the national level and 150 such jobs in Louisiana. (Tr. 451). These jobs constitute a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).
Plaintiff argues that the 2008 FCE also precludes her from performing the order taker job because although she can frequently finger, she can only do so at a non-productive rate. (Tr. 390). However, she retains the ability to type 20 words per minute which belies an inability to meet the demands of order-taking. (*See* Tr. 284-286).

[15] Plaintiff testified that she was paid less than $ 400 per month. (Tr. 423). Substantial gainful activity is defined as work activity that involves significant physical or mental activities, even if performed on a part-time basis; and work that is accomplished for pay or profit, whether or not a profit is realized. 20 C.F.R. § 404.1572.

supported by substantial evidence and remains free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 10th day of August 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE